Curia, per

O’Neall, J.
The second ground of appeal will be first considered. The argument here maintained is, that the existence of the paper was first to be shewn, before the loss could be proved, and that therefore the question was competent. This is, it is true, a very specious way of presenting the argument. But it is a mistake to suppose that such is the rule. Before a paper can be shewn, or spoken of, it must be proved. If it be lost, the loss must be proved, then the lega] existence, by proof of its execution, and then proof of it$ contents. This I suppose to be too were settled to require more than to be *715 stated. But as it has been seriously argued to the contrary, I have looked into Mr. Starkie’s book on evidence for his understanding of the rule ; and in the second part, p. 354, he thus states it, “when sufficient evidence has been given of the loss of the deed, of which it seems the court is to judge, it must be shewn that the paper existed as a genuine instrument.” This is a sufficient answer to the 2d. ground. The first, third and fourth grounds, in reality present a single question, whether the jury were rightly instructed when they were told, that the charge of inveigling, stealing and carrying away the negroes, or of aiding Stephen McCoy in stealing and carrying them away, could be established by any proof which satisfied them that the prisoner stole the negroes, or aided Stephen McCoy in stealing them, in Sumter district. For if the instruction be right, it is not denied that the facts would sustain the conclusion of the jury. This question, I had supposed, had been put at rest, by the innumerable cases decided under the Act in the last ninety years ; but as it seems there still is some doubt about it, and especially so, since by the republication of the Acts in the Statutes at Large, it seems there is a difference, in a slight particular, in the Act of 1754, as thus published, and as it was published by the late Judge Grimke in his Public Laws, I have examined the original Act, and find the publication in the Stat. at Large to be correct. In 7 Stat. at Large 426, the Act is set out as follows, viz: “Whereas, by the laws of this province, negroes and other slaves are deemed to be chattels personal, and are in every respect as much the property of their owners, as apy other goods apd chattels are; and whereas, no punishment can be imflicted, by the laws now in force, upon persons inveigling, stealing and carrying away any such slaves from their lawful owners or employers, that is adequate to so great and growing an evil; and whereas, the inhabitants of this province are liable to and receive great injustice and damage by such unwarrantable and pernicious practices and wicked proceedings; therefore, to prevent and punish, as much as may be, such evil, we humbly pray your most sacred majesty, that it may be enacted, and be it enacted, by his Excellency James Glenn, Esq. Governor and Capt. Ge *716 neral in and Over his majesty’s province of South Carolina, by and with the advice and consent of his majesty’s council, and the House of Assembly of the said province, and by the authority of the same, that from and immediately after the 24th day of June next, all and every person and persons, who shall inveigle, steal and carry away any negro or other slave or slaves, or shall hire, aid or council any person or persons to inveigle, steal or carry away as aforesaid any such slave, so as the owner or employer of such slave or slaves shall be deprived of the use and benefit of such slave or .slaves,” <fee.
It will be observed, that the preamble states, that for inveigling, stealing and carrying away, there was no adequate punishment, not that there was no punishment. When, by the Act of 1740, slaves were decreed to be chattels personal. Stealing them became like any other larceny of goods; this most usually would be grand larceny, and the then punishment, imprisonment and branding. This punishment was supposed to be inadequate, and owing to the facility of committing the offence, the Act of 1754 increased the punishment to death. Looking at it in this way, it is apparent that the offence contemplated by the Act, was that of stealing a negro. The construction of the words is, I think, the same. “To inveigle, steal and carry away,” are the words used in the first branch of the enacting clause; “to hire, aid or counsel any person to inveigle, steal or carry away,” are the words used in the 2d. clause. Can it be that different meanings were intended to be attached to the words used, from the use of the copulative conjunction in the first, and the disjunctive in the 2d. clause'? Clearly not. For if that was the case, the accessory might be condemned, when the principal would go clear. The words used in the first clause, as well as in the second, were intended to make the stealing of a negro? no matter how effected, death to the principal and the accessory. To inveigle, as is said by Judge Nott in Miles’s case, is to seduce, entice and decoy. This is merely persuasive ; and until consummated by the slave departing from his owner’s service, there is no offence ; when that occurs the defendant has inveigled, stole and carried him away. What is that but stealing a negro 1 'J he only dif *717 ference between such stealing and that of a bolt of linen, is, a slave is a human being capable of assent, and hence, that therefore, inveigling is a means by which the larceny is effected.
In the State vs. Miles, 2 N. and McC. 1, Judge Nott supposed the publication of the Act in Public Law’s “to inveigle, steal or carry away,” was correct, and laid much stress on the fact, that the disjunctive, and not the conjunctive, conjunction, was used. But it is plain throughout his opinion, that he regarded the offence as consummated by any thing which would amount to stealing. Indeed the liteial import of his words would make one conclude that he intended to say, that if one inveigled or stole, or carried away a slave, it would be enough. But that clearly was not his meaning. He meant that whoever stole a negro, whether by persuasion or force, was guilty under the Act. He said, as I should say, “it was intended, therefore, literally, as it is expressed to embrace all who should inveigle, steal or carry away such property; that is the construction which has been uniformly given to the Act from the earliest recollection of the oldest member of this bench. Any other construction would render it entirely inoperative.” In Covington’s case, 2d. Bailey, 570, Judge Johnson, speaking of the Act as it was then understood to be from the Public Laws, said, “here, it will be observed, are two distinct offences, inveigling and stealing, differing, it is true, in the manner of perpetration, the one consisting of a moral, or rather immoral, influence over the mind of the slave, and thus subjecting his person to control; the other, of physical force, by which his person is brought into subjection. But in their consequences to the owner, the loss of service, they are identical; and the same circumstances which would constitute evidence of the loss of service in the one cáse, will also constitute it in the other.” It will be here observed, that the Judge supposes there may be two offences under the Act; but in point of fact, he intended to say there were two modes of stealing a negro, one by inveigling, and the other by carrying him away by force. That is, I think, true, and still it does not affect the construction for which I am contending. Indeed it strengthens it. It shews that the offence is stealing, and until inveig *718 ling or carrying away ends in the felonice cepit et asparlavit, the offence would not be made out. In the State vs. La Creux, 1 McMul. 488, it was objected, in the 2d. ground of appeal, against the indictment, that it alleged that the prisoner, “inveigled, stole and carried away the said slave,” which is repugnant and void. The argument in that case was, that the Act created three distinct offences, viz: 1st. to inveigle, 2d. to steal, and 3d. to carry away. But the court answered that “to inveigle so that the owner or employer be deprived of the use and benefit of a slave, is to steal and carry away; and although there may be cases of a stealing and carrying away, in which there is no inveigling, this does not render a charge, in which all are combined, repugnant and void. It only superadds another circumstance, which must be proved to make out the offence as laid.” That case unquestionably shewed that stealing was the offence, and that inveigling was only one of the means of perpetrating it. The concluding observation cited, was more than the case required, and is not exactly correct. It would be better to say, that in the usual cases of stealing a negro, the presumption is that the offence was brought to its consummation by inveigling; but if it appeared to be perpetrated by force, that there inveigling is a wholly immaterial circumstance, in both the statute and the charge, and need not be proved. The motion is dismissed.
Richardson, Evans, Butler and Wardlaw, JJ. concurred.